IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-HC-02058-M

DENNIS BENJAMIN ROY, )
)
      Petitioner, )
)
v. ) ORDER
)
STATE OF NORTH CAROLINA, )
)
      Respondent. )

On March 25, 2022, Dennis Benjamin Roy ("petitioner"), a state inmate, filed *pro se* what the court construed as a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. See Pet. [D.E. 1]. In response to an order of deficiency, Order [D.E. 3], petitioner filed a petition on the forms prescribed for use by the court, Am. Pet. [D.E. 4].

Pursuant to 28 U.S.C. § 2243 and Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the court now conducts its preliminary review and, for the reasons discussed below, dismisses the petition without prejudice.

Background:

Petitioner collaterally attacks his November 2011 first-degree murder conviction in New Hanover County. Am. Pet. [D.E. 4] at 1. The facts were described as follows on direct appeal:

> The State's evidence tended to establish the following. Dennis Benjamin Roy ("Defendant") was renting a room in the home of a married couple, Carmine and Mary Bruno, on South Branch Road in Wilmington. During the period relevant to the occurrences discussed herein, Defendant was having an affair with Mrs. Bruno.
>
> On 5 January 2010, Defendant arrived at the Bruno residence and saw Mr. and Mrs. Bruno watching television in the living room. Mr. Bruno "made [a] snide remark about [not making] a big mess in the bedroom, and ... went on a tirade about closing the doors, and threatened ... to beat [Defendant] up." Defendant ignored Mr. Bruno. After spending a few hours in his room thinking, Defendant went outside to smoke

a cigarette. Defendant then went to sit down in the living room, at which point Mr. Bruno made a second threatening comment to Defendant. After a few minutes, Defendant made eye contact with Mrs. Bruno and the two of them went outside to smoke a cigarette and talk. Defendant began "ranting and raving" about Mr. Bruno at that time. Defendant said "something like ... I wish he was dead"; Mrs. Bruno responded by noting that "people die all the time." At this point, Mrs. Bruno "indicated a plan to do [Mr. Bruno] in [.]" Upon reentering the house, Defendant went upstairs and retrieved a baseball bat. Defendant returned to the living room to find Mr. Bruno asleep on a loveseat. Defendant, standing over Mr. Bruno, looked at Mrs. Bruno who "indicated [with] a nod of her head" in the affirmative to Defendant. Defendant then struck Mr. Bruno on the back of the head with the baseball bat. Defendant paused after this first blow when Mrs. Bruno screamed, but then continued to kill Mr. Bruno by beating him to death with the baseball bat.

Neither Defendant nor Mrs. Bruno called the police. Defendant moved Mr. Bruno's body into the kitchen, wrapped it in a shower curtain and blanket, and then took it to the garage. Defendant then cleaned up the scene of the killing before going to sleep. The following morning, Defendant and Mrs. Bruno continued cleaning the living room.

On 7 January 2010, two days after the killing, Mrs. Bruno called her brother, Herman Jackson, in what he would later describe as a state of hysteria. Mr. Jackson, unsure of the cause of his sister's hysteria, called emergency services and went over to Mrs. Bruno's residence. The fire department arrived and discovered the body of Mr. Bruno at the base of a set of stairs near the garage. They secured the scene and called the police, who began an investigation that included the questioning of Defendant. A New Hanover County grand jury indicted Defendant for first-degree murder on 22 March 2010.

At trial, Defendant admitted killing Mr. Bruno; Defendant also corroborated many of the aforementioned facts in his testimony, including the manner in which he killed Mr. Bruno and where he left the body. Regarding Mr. Bruno, Defendant testified that he thought on at least one occasion that he would "like to kill that son of a bitch." Furthermore, Defendant admitted to having written a note sometime in December of 2009 that read: "I have the bat out on my bed. I came so close to using it on that foul-mouthed bastard. Okay. If I hear fuck one more time. Give me the okay, I will kill him. Say yes now."

Dr. John Blackshear, an expert in the field of psychology, testified that Defendant was under a lot of stress at the time of the killing. Blackshear concluded, after speaking with Defendant but without reviewing any of the State's discovery materials, that Defendant exploded under the pressure of stress, resulting in the murder of Mr. Bruno. At the jury charge conference, Defendant requested that the jury be instructed on the lesser-included offense of second-degree murder.

2

After hearing argument from both Defendant and the State, the trial court denied this request, and Defendant's counsel again objected for the record. The jury found Defendant guilty of first-degree murder.

State v. Roy, 223 N.C. App. 364, 734 S.E.2d 140 (2012)

Petitioner's Filing:

Petitioner is serving a life sentence without parole pursuant to this November 2011 first-degree murder conviction in New Hanover County. Compare Am. Pet. [D.E. 4] at 1 (identifying his date of conviction as Nov. 14, 2011); with N.C. Dep't Pub. Safety, Offender Pub. Info., https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0353663&searchOffenderId=0353663&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (identifying his date of conviction as Nov. 18, 2011) (last visited Nov. 18, 2022).

Petitioner appealed his conviction to the North Carolina Court of Appeals. Compare Am. Pet. [D.E. 4] at 2 (stating that, on September 27, 2012, the North Carolina Court of Appeals found "no error in part [sic]"); with Roy, 223 N.C. App. 364, 734 S.E.2d 140 (2012) (Nov. 6, 2012, North Carolina Court of Appeals opinion finding no error). Petitioner indicates he did not seek further review in the North Carolina Supreme Court, but his petition for certiorari in the United States Supreme Court was decided in 2013. See Am. Pet. [D.E. 4] at 2–3. As to whether he filed other petitions, applications, or motions concerning this judgment of conviction in state court, petitioner indicates that he filed a petition for a writ of mandamus in the North Carolina Court of Appeals on May 21, 2014, "seeking for the court to compel the trial court to rule on his motion for appropriate relief [sic]." Id. Petitioner indicates that this petition was denied on June 9, 2014. Id. at 4.

Petitioner also indicates he filed a Motion for Appropriate Relief ("MAR") in New Hanover County Superior Court on March 26, 2015, that was denied on April 17, 2015. Id. As

to whether he filed any additional petition, application, or motion, petitioner indicates that he did not. Id. Petitioner further indicates that, because he "did not have proper counseling to seek the state of [his] claims [sic]," he did not appeal to the highest state court having jurisdiction over the action taken on his petition, application, or motion. Id. at 5.

As to his first ground for relief, petitioner argues that the trial court violated his due process rights when it failed "to instruct on second-degree murder as a lesser-included offense." Id. at 6. Petitioner contends a second-degree murder instruction was warranted because he stated in his interview with police that "the rage built up" and that he "didn't plan to kill" the victim, and because he stated in trial testimony that "I snapped, and I-I don't recollect having any rational thoughts about-about anything at that point." Id. at 7. Petitioner notes he raised this argument in the MAR that was denied on April 17, 2015, but that he did not appeal the denial. Id. at 8.

As to his second ground for relief, petitioner argues that the trial court erred in failing to instruct on "acting in concert." Id. at 10. Petitioner essentially contends that he was working in concert with Mrs. Bruno, with whom he was in an intimate relationship, when he killed the victim. Id. at 10–11. Petitioner notes that he did not raise this issue on direct appeal or post-conviction proceedings, stating that "this is a new ground never before brought into this case [sic]." Id. at 9.

As to the timeliness of his petition, and as to why the one-year statute of limitations as contained in 28 U.S.C. §2244(d) does not bar his petition, petitioner states: "Because I was going through the lower courts trying to exhaust all other remedies & studying the law to better proffer my case when presented to the higher courts [sic]." Id. at 17.

For relief, petitioner asks the court to vacate his November 2011 first-degree murder conviction and grant him a new trial. Id. at 19.

4

Discussion:

Absent a valid excuse, state prisoners must exhaust all available state-court remedies before seeking federal habeas relief. See 28 U.S.C. § 2254(b); Woodford v. Ngo, 548 U.S. 81, 92 (2006); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (noting exhaustion doctrine is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

North Carolina prisoners may satisfy habeas exhaustion by either 1) directly appealing convictions to the North Carolina Court of Appeals and then petitioning the North Carolina Supreme Court for discretionary review, or 2) filing a motion for appropriate relief ("MAR") and then petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-31, 15A-1415, 15A-1422. Petitioner bears the burden of proving a claim was exhausted. See Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994), cert. denied, 513 U.S. 1047 (1994).

Here, although he directly appealed his conviction to the North Carolina Court of Appeals, petitioner acknowledges that he failed to petition the North Carolina Supreme Court for discretionary review. See Am. Pet. [D.E. 4] at 2–3. Further, although he filed an MAR, he again acknowledges that he did not petition the North Carolina Court of Appeals for a writ of certiorari after this MAR was denied. Id. at 3–5. Thus, petitioner failed to fully exhaust his available state-court remedies before filing the instant federal habeas petition, and the court discerns no valid excuse for this failure. See 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 845; Mallory, 27 F.3d at 994; see also Jones v. Ross, 257 F. Supp. 798, 801 (E.D.N.C. 1966) ("It has been stated many times that the writ of habeas corpus is not to be used as a substitute for the procedures of appeal").

5

Case 5:22-hc-02058-M   Document 6   Filed 11/28/22   Page 5 of 9

Alternatively, this petition is untimely. The court may *sua sponte* dismiss a § 2254 petition without notice if "it is indisputably clear from the materials presented to the district court that the petition is untimely and cannot be salvaged by equitable tolling principles or any of the circumstances enumerated in § 2244(d)(1)." Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires an individual in custody pursuant to the judgment of a state court to file any application for a writ of habeas corpus within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); see Frasch v. Peguese, 414 F.3d 518, 521 (4th Cir. 2005).

AEDPA's one-year limitation period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Hernandez v. Caldwell, 225 F.3d 435, 438–39 (4th Cir. 2000). An application for post-conviction review is pending from initial filing in state court until final disposition in the highest state court. See Taylor v. Lee, 186 F.3d 557, 560–61 (4th Cir. 1999). However, the running of AEDPA's limitation period resumes once the state's highest court resolves the state post-conviction proceedings, and the time between when

6

a petitioner's conviction becomes final and when a petitioner files a state application for post-conviction relief also counts against AEDPA's limitation period. Harris v. Hutchinson, 209 F.3d 325, 327–28 (4th Cir. 2000); see also Holland v. Florida, 560 U.S. 631, 635–38 (2010).

Here, although petitioner indicates that his certiorari petition in the Supreme Court of the United States was decided in 2013, see Am. Pet. [D.E. 4] at 3, the court finds no record of this petition. Thus, because petitioner acknowledges that he failed to seek discretionary review in the North Carolina Supreme Court, see id. at 2–3, judgment in his case became final thirty-five days after the North Carolina Court of Appeals affirmed his conviction on November 6, 2012. See N.C. R. App. P. 15(b) (providing a petition for discretionary review must be filed within fifteen days after Court of Appeals mandate); N.C. R. App. P. 32(b) (providing that, unless a court orders otherwise, a mandate issues twenty days after an opinion is filed). The AEDPA one-year limitation period then ran uninterrupted for 365 days until it expired, and neither petitioner's May 21, 2014, petition for a writ of mandamus in the North Carolina Court of Appeals, nor his March 26, 2015, MAR in New Hanover County Superior Court reopened the time for filing a federal habeas petition. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Petitioner also does not allege: State action impeded the filing an earlier habeas petition; the recognition of a new constitutional right; or a factual predicate for his instant claims that could not have been earlier discovered. Cf. 28 U.S.C. § 2244(d)(1). Thus, absent equitable tolling, the instant petition is untimely.

AEDPA's one-year limitation period is subject to equitable tolling, but only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (quotation

7

omitted); see Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008). A court may allow equitable tolling under § 2244 "in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Green, 515 F.3d at 304 (quotations omitted); see Jackson v. Kelly, 650 F.3d 477, 491–92 (4th Cir. 2011). "[A]ny invocation of equity to relieve the strict application of a statute of limitations," however, "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Harris, 209 F.3d at 330.

Although petitioner asserts that he did not earlier file this petition because he "did not have proper counsel" and he was studying law to better present his case, see Am. Pet. [D.E. 4] at 5, 17, his unfamiliarity with the law, lack of legal representation, and incarcerated status are insufficient grounds to support a finding of equitable tolling, see United States v. Sosa, 364 F.3d 507, 512–13 (4th Cir. 2004); see also Harris, 209 F.3d at 330–31 (collecting cases). Because petitioner has not made the requisite showing, equitable tolling is not warranted. See Holland, 560 U.S. at 649; Green, 515 F.3d at 304.

To the extent petitioner instead argues that the petition's untimeliness may be excused under the "actual innocence" exception, "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, . . . or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). However, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Petitioner is required to "support his

8

allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324; see Bousley v. United States, 523 U.S. 614, 623 (1998) (noting "'actual innocence' means factual innocence, not mere legal insufficiency." (citation omitted)).

Here, there is no showing that an actual-innocence claim is supported by "new reliable evidence." Cf. Schlup, 513 U.S. at 324. Moreover, the bald claims underpinning petitioner's grounds for relief–that the trial court instead should have instructed the jury on "acting in concert" and second-degree murder–fail to convince the court that no reasonable juror would have voted to find petitioner guilty beyond a reasonable doubt. Cf. id. at 329. Accordingly, the instant petition falls well short of the threshold requirement for "actual innocence," McQuiggin, 569 U.S. at 386, and remains time-barred under 28 U.S.C. § 2244(d)(1).

Finally, because reasonable jurists would not find the court's treatment of any of these claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further, the court denies a Certificate of Appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

### Conclusion:

In sum, the court: DISMISSES WITHOUT PREJUDICE the instant § 2254 habeas petition for failure to exhaust or, alternatively, as untimely; DENIES a Certificate of Appealability; and DIRECTS the clerk to close the case.

SO ORDERED, this 28th day of November 2022.

Richard E Myers II
RICHARD E. MYERS II
Chief United States District Judge